IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAYMENTS IP PTY LTD.,

    *Plaintiff*,

    v.

B52 MEDIA LLC et al.,

    *Defendants*.

Civil Action No. ELH-17-389

**MEMORANDUM OPINION**

On February 10, 2017, Payments IP Pty. Ltd. ("Payments IP"), an Australian company, sued B52 Media, LLC ("B52") and Jonathan W. Bierer, as personal representative of the Estate of Lonnie Borck (collectively, the "B52 Defendants"). ECF 1. Borck had been the owner of B52. *Id.* ¶ 5. The suit is rooted in a dispute as to the ownership of the domain name "Funding.com" (the "Domain").

Payments IP alleged that, in the summer of 2016, it contracted with the B52 Defendants to purchase the Domain. *Id.* ¶¶ 15-25. In December of 2016, however, Payments IP noticed that the Domain had been placed on an "administrative freeze" by the domain registrar, eNom.com, because the Domain was the subject of litigation. *Id.* ¶ 26. It was at that time that Payments IP discovered that a third party, Suraj Kumar Rajwani, was asserting ownership of Funding.com, and had filed suit in the Superior Court of California, County of San Francisco, against the B52 Defendants and three other parties related to the Domain's registration. *Id.*; *see Rajwani v. B52 Media LLC et al.*, Case CGC-16-554684 (Cal. Super. Ct.) (the "California case").

Payments IP filed for leave to intervene in the California case on February 3, 2017. The California court granted that motion on February 7, 2017. *See* ECF 43-9 at 4 (California case docket). Three days later, on February 10, 2017, Payments IP filed this suit, alleging six causes

of action against the B52 Defendants. ECF 1. Four days after that, Payments IP filed its complaint in intervention in the California state court, asserting claims very similar to those alleged in this Court. *See* ECF 43-7 (Complaint in Intervention in the California case).

In particular, in the Maryland case, Payments IP's Complaint sought a declaratory judgment as to its ownership of the Domain. ECF 1 at 7-8. In addition, plaintiff alleged breach of contract; fraud and deceit; rescission and restitution; conversion; and unjust enrichment. *Id.* at 8-14. In May 2017, Payments IP filed an Amended Complaint, adding Mr. Rajwani as a defendant as to the declaratory judgment claim only. ECF 31.

Jurisdiction is alleged on the basis of diversity of citizenship. *Id.* ¶¶ 11-15. Plaintiff alleges that B52 is a Maryland limited liability company with its principal office in Maryland; Mr. Bierer is a citizen of Maryland; Mr. Borck had lived in Maryland and his Estate is administered in Maryland; Payments IP is a foreign company; and Mr. Rajwani is a citizen of California. *Id.* ¶¶ 11-14. The amount in controversy allegedly exceeds $75,000. *Id.* ¶ 14.

Four motions are pending. With regard to ECF 1, the B52 Defendants filed a motion to stay this case, pending the resolution of the California case. ECF 13 ("First Motion"). Payments IP opposed the First Motion. ECF 18. The B52 Defendants replied. ECF 22. Payments IP subsequently sought leave to file a surreply (ECF 23, "Motion for Surreply"), which the B52 Defendants opposed. ECF 26.

After plaintiff filed the Amended Complaint, the B52 Defendants renewed their motion to stay. ECF 34 ("Second Motion"). Payments IP opposes the Second Motion. ECF 40. Mr. Rajwani also filed a motion to dismiss or stay. ECF 43. His motion is supported by a memorandum of law (ECF 43-1) (collectively, the "Rajwani Motion"), and several exhibits. Payments IP opposes the Rajwani Motion. ECF 51. Rawjani has replied. ECF 54 ("Reply").

On December 6, 2017, counsel for Payments IP informed the Court that the California case had been removed to federal court. ECF 69; *see Rajwani v. B52 Media LLC et al.*, Case 3:17-cv-06848-VC (N.D. Cal.). Mr. Rajwani moved to remand the case to state court, *see* Case 3:17-cv-06848-VC at ECF 13, and the motion to remand was granted on February 9, 2017. *See id.* at ECF 22. Counsel for Payments IP informed the Court of the remand on February 14, 2018. ECF 70.

The drafting of this Memorandum Opinion was almost completed when, on February 16, 2018, B52 filed a Suggestion of Bankruptcy. ECF 71. Pursuant to 11 U.S.C. § 362, "all legal proceedings against Defendant B52 are automatically stayed." *Id.* B52's bankruptcy filing, attached to the Suggestion of Bankruptcy as an exhibit, lists as creditors every other party in this case: Payments IP; Suraj Kumar Rajwani; and Jonathan Bierer. ECF 71-1 at 5. Although the case is stayed as to B52, both B52 and Bierer filed joint motions. Therefore, I shall refer to them collectively in the discussion of their submissions.

No hearing is necessary to resolve the pending motions. *See* Local Rule 105.6. As indicated, this case must be stayed as to B52. And, as discussed, *infra*, a stay of the case is appropriate.

For the reasons that follow, I shall GRANT the Rajwani Motion in part and DENY it in part. This Court is satisfied that defendants have made a *prima facie* showing of personal jurisdiction over Mr. Rajwani. However, the declaratory judgment count shall be stayed as to Mr. Rajwani and all other claimants, so long as the California court retains jurisdiction over the Domain. I shall GRANT the Second Motion as to Bierer, in his capacity as representative of the Estate of Lonnie Borck, pending resolution of the California case. And, I shall DENY the Motion for Surreply and DENY the First Motion, as moot.

# I. Rajwani Motion

Mr. Rajwani has moved to dismiss the Amended Complaint under Rule 12(b)(1) and 12(b)(2), asserting that this Court lacks jurisdiction over the Domain; that this Court lacks personal jurisdiction over him; or, in the alternative, that the case should be stayed pending the resolution of the California case. ECF 43. He also claims that he moves to dismiss under Rule 12(b)(6) (*id.* at 1), but his memorandum does not address the alleged failure of the Amended Complaint to state a claim. Because the motion to dismiss for lack of personal jurisdiction would, if granted, remove him from the case, I shall consider it first.

## A. Motion to Dismiss for Lack of Personal Jurisdiction

Mr. Rajwani's motion to dismiss for lack of personal jurisdiction is predicated on Fed. R. Civ. P. 12(b)(2). ECF 43. "[A] Rule 12(b)(2) challenge raises an issue for the court to resolve, generally as a preliminary matter." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). Under Rule 12(b)(2), the burden is "on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *see Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014).

"If the existence of jurisdiction turns on disputed factual questions the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs*, 886 F.2d at 676. A court may also, in its discretion, permit discovery as to the jurisdictional issue. *See Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993). However, neither discovery nor an evidentiary hearing is required to resolve a motion under Rule 12(b)(2). *See generally* 5B C. Wright & A. Miller, *Federal Practice & Procedure* § 1351 (3d ed. 2004, 2011 Supp.). Rather, the district court may address the question of personal jurisdiction as a

preliminary matter, ruling solely on the basis of motion papers, supporting legal memoranda, affidavits, and the allegations in the complaint. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009).

In that circumstance, the plaintiff need only make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.*; *see Grayson*, 816 F.3d at 268. Of import here, "'[a] threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing.'" *New Wellington Fin. Corp. v. Flagship Resort Development Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005) (citation omitted).

"In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc*., 334 F.3d 390, 396 (4th Cir. 2003). But, "district courts are not required to look solely to the plaintiff's proof in drawing those inferences." *Mylan Laboratories,* 2 F.3d at 62.

Fed. R. Civ. P. 4(k)(1) authorizes a federal district court to exercise personal jurisdiction over a defendant in accordance with the law of the state in which the district court is located. *Carefirst of Maryland*, 334 F.3d at 396. Therefore, "to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id.*

## 1. Maryland's Long-Arm Statute

Maryland's long-arm statute is codified at Md. Code (2013 Repl. Vol., 2017 Supp.), § 6-103(b) of the Courts & Judicial Proceedings Article ("C.J."). It authorizes "personal jurisdiction over a person, who directly or by an agent," *id*.:

> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
> (3) Causes tortious injury in the State by an act or omission in the State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
> (5) Has an interest in, uses, or possesses real property in the State; or
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

When interpreting the reach of Maryland's long-arm statute, a federal district court is bound by the interpretations of the Maryland Court of Appeals. *See Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130 (D. Md. 1981), *aff'd*, 758 F2d 649 (4th Cir. 1985); *accord Mylan Laboratories,* 2 F.3d at 61. Regarding the interaction between the two conditions for personal jurisdiction, the Maryland Court of Appeals has stated: "Because we have consistently held that the reach of the long arm statute is coextensive with the limits of personal jurisdiction delineated under the due process clause of the Federal Constitution, our statutory inquiry merges with our constitutional examination." *Beyond Systems, Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 15, 878 A.2d 567, 576 (2005) (citing *Mohamed v. Michael*, 279 Md. 653, 657, 370 A.2d 551, 553 (1977)).

In *Mackey v. Compass Marketing, Inc.*, 391 Md. 117, 141 n.5, 892 A.2d 479, 493 n.5 (2006), the Maryland Court of Appeals clarified that it "did not, of course, mean by this that it is

now permissible to simply dispense with analysis under the long-arm statute." Rather, courts must still engage in the two-step analysis: "First, we consider whether the requirements of Maryland's long-arm statute are satisfied." *CSR, Ltd. v. Taylor*, 411 Md. 457, 472, 983 A.2d 492, 501 (2009) (citations omitted). "Second, we consider whether the exercise of personal jurisdiction comports with the requirements imposed by the Due Process Clause of the Fourteenth Amendment." *Id.*

In its Amended Complaint, Payments IP alleges that this Court has personal jurisdiction over Mr. Rajwani because he "purposefully availed himself of the privilege of conducting activities in Maryland by directly contacting and thereafter contracting" with the B52 Defendants, and that Payments IP's claim arises out of these events. ECF 31, ¶ 13. Furthermore, Payments IP alleges that "Mr. Rajwani's actions have caused and continue to cause tortious injury in Maryland to Payments IP's domain Funding.com by preventing use of the domain open to and available to Maryland residents." *Id.*

Mr. Rajwani maintains that he has insufficient contacts with the State of Maryland to satisfy the long-arm statute. ECF 43-1 at 19-25. In particular, he emphasizes that the B52 Defendants, and not Mr. Rajwani, initiated contact in regard to the sale of the Domain. *Id.* at 22; ECF 43-3 (Declaration of Rajwani), ¶ 7. Further, he declares that he remained in California throughout the contract negotiations, except for one meeting in New York. ECF 43-1 at 23; ECF 43-3, ¶ 9. Moreover, he asserts that he executed the contract for the sale of the Domain in California. ECF 43-1 at 23; ECF 43-3, ¶ 10. That contract specifies that "[a]ll questions with respect to . . . the rights and liabilities of the parties hereto shall be governed by the laws of the State of California." ECF 43-4 at 23. However, Mr. Rajwani admits that he visited Maryland on

one occasion in 2015 to meet with Mr. Borck, the owner of B52, in connection with the negotiations over the Domain. ECF 43-3, ¶ 14.

Notably, Payments IP does not dispute Mr. Rajwani's assertions. Instead, it points to the "repeated dealings" between Mr. Rajwani and the B52 Defendants, the latter being domiciled in Maryland. ECF 51 at 23. In particular, Payments IP cites Mr. Rajwani's own complaint in the California case, which alleges that Rajwani transferred money to B52 on four occasions, totaling (according to Mr. Rajwani) approximately $600,000. ECF 43-4 at 4-14 (California complaint).

Payments IP compares this case to *Dynacorp Ltd. v. Aramtel Ltd.*, 208 Md. App. 403, 56 A.3d 631 (2012), to support its assertion that Mr. Rajwani purposely availed himself of conducting activities in Maryland by engaging in negotiations with the B52 Defendants concerning the sale of the Domain. In *Dynacorp*, the Maryland Court of Special Appeals found that a party transacted business in the state when he entered into a contract with a Maryland resident, signed a contract in Maryland, participated in meetings in Maryland, and sued the counterparties in a Maryland circuit court. *Dynacorp*, 208 Md. App. at 486, 56 A.3d at 680. Thus, he "could have reasonably expected that [his] conduct could subject [him] to suit within Maryland." *Id.* The court also found that the claims underlying the *Dynacorp* case arose from activities directed at Maryland. *Id.* at 486-87, 56 A.3d at 680-81.

Elements of *Dynacorp* are distinguishable from this case. Here, Mr. Rajwani participated in contract negotiations from California. And, he did not execute the contract in Maryland. ECF 43-3, ¶¶ 7, 9, 10. However, Mr. Rajwani conducted his negotiations with B52, a Maryland entity, over the course of several years. *Id.* ¶¶ 7, 11, 13, 14. He entered multiple agreements with B52, even if the agreements pertained to a single underlying transaction. See ECF 51-3 at 34-37, 40, 43, 46, 49. Although Mr. Rajwani may not have "executed" the contract in Maryland,

he did perform it, at least in part, by sending money to B52's account in Maryland.  ECF 51-3 at 35.  And, he later came to Maryland to resolve the resulting contract dispute.  ECF 43-3, ¶ 14.

Payments IP also contends in its Amended Complaint that Mr. Rajwani caused "tortious injury in Maryland to Payments IP's domain Funding.com by preventing use of the domain open to and available to Maryland residents" (ECF 31, ¶ 13), implying jurisdiction under  § 6-103(b)(3) or (4).  This assertion is without merit.  Payments IP offers no legal or factual basis for the assertion that Mr. Rajwani's conduct was tortious, or even that any Maryland residents were prevented from using the Domain.  No personal jurisdiction arises from this clause of the long-arm statute.  C.J. § 6-103(b)(3).  Indeed, Payments IP has not defended this allegation in its Opposition.

As discussed, at this stage of litigation, Payments IP must only make a *prima facie* showing that this Court has personal jurisdiction over Mr. Rajwani.  Because of Mr. Rajwani's dealings with Maryland entities, including ongoing negotiations and a visit to Maryland, I find that Payments IP has satisfied this standard with respect to the assertion that Mr. Rajwani "[t]ransact[ed] . . . business or perform[ed] any character of work or service in the State."  C.J. § 6-103(b)(1).

## 2.  Due Process Requirements

The Supreme Court has long held that personal jurisdiction over a nonresident defendant is constitutionally permissible so long as the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).  Courts have separated this test into individual "prongs," first ascertaining whether the threshold of "minimum contacts" is met, and then considering whether the exercise of jurisdiction on the

basis of those contacts is "constitutionally reasonable." *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

Due process jurisprudence recognizes "two types of personal jurisdiction: general and specific." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India,* 551 F.3d 285, 292 n. 15 (4th Cir. 2009). The Fourth Circuit has explained: "'If the defendant's contacts with the State are also the basis for the suit, those contacts may establish specific jurisdiction.'" *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012) (quoting *ALS Scan*, 293 F.3d at 712). In contrast, general jurisdiction "requires a more demanding showing of 'continuous and systematic' activities in the forum state." *Id.* (quoting *ALS Scan*, 293 F.3d at 712). Here, Payments IP does not appear to assert that Mr. Rajwani is subject to general personal jurisdiction in Maryland. Therefore, I shall consider only whether Mr. Rajwani is subject to specific personal jurisdiction in this Court.

The Fourth Circuit has formulated a three-part test for courts to use in determining whether there is specific jurisdiction over a defendant. The three prongs are: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Engineers*, 561 F.3d at 278 (citing *ALS Scan,* 293 F.3d at 715); *accord Carefirst of Maryland*, 334 F.3d at 397.

The first element of the *Consulting Engineers* test, 561 F.3d at 278, purposeful availment, "articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Id.* The Supreme Court expounded on the minimum contacts requirement in *Burger King*

*Corp. v. Rudzewicz*, 471 U.S. 462 (1985). There, a franchisor sued a franchisee in Florida, alleging, *inter alia,* breach of franchise obligations. *Id.* at 464-66. The defendants claimed the court lacked personal jurisdiction as to them. *Id.* at 469. In the context of specific jurisdiction, the Court explained that minimum contacts involve "significant activities within a State" or "'continuing obligations' between [the defendant] and residents of the forum." *Id.* at 475-76 (citations omitted). Notably, the "benchmark" is not the "foreseeability of causing *injury* in another State . . . ." *Id.* at 474 (emphasis in *Burger King*). Rather, it is "'foreseeability . . . that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *World-Wide Volkswagen Corp v. Woodson*, 444 U.S. 286, 295 (1980)).

The *Burger King* Court stated unequivocally that entering into a contract with a citizen of the forum state "*alone*" cannot "automatically establish minimum contacts" over a nonresident defendant. *Burger King*, 471 U.S. at 478 (emphasis in original). Conversely, the Court made clear that "even a single act can support jurisdiction," so long as that act "creates a 'substantial connection' with the forum." *Id.* at 475 n.18 (citation omitted). The Court said: "Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there," jurisdiction cannot be "avoided merely because the defendant did not *physically* enter the forum State." *Id.* at 476 (emphasis in original). The *Burger King* Court also observed that "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Id.*

Nevertheless, the Court said, 471 U.S. 474: "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." "Th[e] 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (internal citations omitted); *see also Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 328 (4th Cir. 2013); *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 392 (4th Cir. 2012). A determination that the defendant has established minimum contacts with the forum state amounts to a conclusion that "'it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.'" *Burger King*, 471 U.S. at 476.

In *Consulting Engineers*, 561 F.3d at 278, the Fourth Circuit said: "[I]f a court finds that the defendant has availed himself of the privilege of conducting business in the forum, specific jurisdiction exists." The Court enumerated several "nonexclusive factors," applicable in the "business context," which may help to "resolve whether a defendant has engaged in such purposeful availment":

- whether the defendant maintains offices or agents in the forum state;

- whether the defendant owns property in the forum state;

- whether the defendant reached into the forum state to solicit or initiate business;

- whether the defendant deliberately engaged in significant or long-term business activities in the forum state;

- whether the parties contractually agreed that the law of the forum state would govern disputes;

- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;

- the nature, quality and extent of the parties' communications about the business being transacted; and

- whether the performance of contractual duties was to occur within the forum.

(Internal citations omitted). The Court cautioned, however, that these factors are "not susceptible of mechanical application." *Id.*

The following facts are undisputed. Mr. Rajwani does not maintain offices or agents in Maryland (ECF 43-3); he does not own property in Maryland (*id.*); he did not solicit a Maryland resident for the purchase of the Domain (*id.*); he has no ongoing commercial activities in Maryland (*id.*); and the law of Maryland does not govern the contract to purchase the Domain. *See* ECF 43-5 at 4.

The "quality and extent of the parties' communications about the business being transacted" was not so substantial as to subject Mr. Rajwani to *general* personal jurisdiction. However, contract negotiations went on for several years between Rajwani and B52, which was located in Maryland. ECF 43-3, ¶¶ 7, 11, 13, 14. Moreover, Rajwani sent money, allegedly on several occasions, to B52's account in Maryland. ECF 51-3 at 35; ECF 43-4 at 8-14. And, Mr. Rajwani acknowledges that he met with Mr. Borck, the owner of B52, in Maryland for a "brief meeting" at "some time in 2015" to discuss the Domain. ECF 43-3, ¶ 14.[1]

Moreover, Mr. Rajwani filed a claim with the Register of Wills in Maryland against the estate of Mr. Borck. *See* ECF 51-3 at 2. The claim is predicated on the underlying transaction involving the Domain. *See* ECF 51-3 at 2 (Maryland Register of Wills Docket for the Estate of Lonnie G. Borck). Although this claim may not be equivalent to the civil suit in *Dynacorp*, it helps establish a *prima facie* showing that Mr. Rajwani "'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and

---

[1] Mr. Rajwani does not clarify his definition of a "brief meeting."

protections of its laws.'" *Burger King,* 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

To be sure, the declaratory judgment claim arises from Mr. Rajwani's assertion of ownership over the Domain, and not directly from his business dealings in Maryland. But, I am satisfied that the connection between Mr. Rajwani's Maryland dealings and the declaratory judgment is sufficiently substantial to conclude that Payments IP's claim arises from Mr. Rajwani's Maryland contacts. *C.f. Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). For the same reasons, it is "constitutionally reasonable" to require Mr. Rajwani to defend himself in Maryland. *See Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 304-05 (4th Cir. 2012).

In sum, Payments IP has made a *prima facie* showing that Mr. Rajwani is subject to personal jurisdiction in this district. Accordingly, I shall deny Mr. Rajwani's motion to dismiss the declaratory judgment claim against him. However, at the appropriate time, discovery pertaining to jurisdiction may shed light on the issue. And, at trial, Payments IP must prove the existence of personal jurisdiction by a preponderance of the evidence. *New Wellington*, 416 F.3d at 294 n.5.

### B. The *Brillhart/Wilton* Doctrine

Mr. Rajwani urges the Court to abstain from jurisdiction under the *Brillhart/Wilton* doctrine. ECF 43-1 at 28-32; *see Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942). That doctrine allows district courts to decline jurisdiction over declaratory judgment actions in certain circumstances. *See Great American Ins. Co. v. Gross*, 468 F.3d 199, 210 (4th Cir. 2006). However, as the Fourth Circuit held in *Great American*, a district court is "not at liberty to abstain from entertaining . . . declaratory judgment

claims" when a plaintiff also seeks closely related non-declaratory relief. *Id.* This is because declining jurisdiction over the declaratory claim would not affect the other claims, and so "'would not save any judicial resources.'" *Id.* (quoting *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 466 (4th Cir. 2005)).

In his Reply, Mr. Rajwani asserts that, because the declaratory judgment claim is the only claim against him, dismissing that claim would serve the purpose of the *Brillhart/Wilton* doctrine by releasing him from the litigation. ECF 54 at 13. Although such dismissal might save Mr. Rajwani's resources, it would not save any of the Court's—and "judicial resources" are the focus of the inquiry. Accordingly, I decline to abstain under the *Brillhart/Wilton* doctrine. However, as discussed, *infra*, I shall stay the declaratory judgment claim on other grounds.

### C. The *Princess Lida* Doctrine

Mr. Rajwani also moves to dismiss the case in this Court for lack of subject matter jurisdiction, on the basis of the prior Exclusive Jurisdiction Doctrine, also known as the *Princess Lida* doctrine. ECF 43-1 at 13; *see Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456 (1939). "According to the *Princess Lida* doctrine, a federal court may not exercise jurisdiction when granting the relief sought would require the court to control a particular property or res over which another court already has jurisdiction." *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 231 (4th Cir. 2000) (citing *Princess Lida*, 305 U.S. at 465-67). Mr. Rajwani argues that because Payments IP seeks "a declaratory judgment against Mr. Rajwani [and B52] finding that it owns all rights and interests in the domain" (ECF 43-1 at 7), this case is therefore one *in rem.* Further, Mr. Rajwani asserts that the California case, which includes claims to quiet title in the Domain, should also be considered as an *in rem* or *quasi in rem* action, thereby

barring this Court from exercising jurisdiction over the declaratory judgment claim. ECF 43 at 14-15.

As a threshold matter, although the law on this question is less than crystal clear, it appears that the *Princess Lida* doctrine is one of abstention, rather than subject matter jurisdiction. *See Al-Abood*, 217 F.3d at 231-32; *see also Carvel v. Thomas & Agnes Carvel Found.*, 188 F.3d 83, 86 (2d Cir. 1999) ("Accordingly, we hold that the rule of Princess Lida is an abstention-related doctrine . . . ."); *Crawford v. Courtney*, 451 F.2d 489, 492 (4th Cir. 1971) (referring to "compulsory *Princess Lida*-type abstention"). Thus, if the *Princess Lida* doctrine is implicated, this Court should dismiss or stay the declaratory judgment claim, but it does not lack subject matter jurisdiction.

Payments IP's declaratory judgment claim seeks to adjudicate the ownership of the Domain. It states, ECF 31, ¶ 40: "Payments IP seeks a Declaratory Judgment . . . declaring Payments IP's exclusive rights to the *Funding.com* domain name and all related rights against any and all adverse claims of [the B52 Defendants], Mr. Rajwani, and all other claimants, known and unknown . . . ." Payments IP's other five claims are strictly *in personam*, as they concern contracts and fraud, and do not require this Court to exercise jurisdiction over the *res*. If applicable, the *Princess Lida* doctrine would only preclude jurisdiction over the declaratory action. *See Al-Abood*, 217 F.3d at 232 ("This action is strictly for money damages, and does not involve any particular property or res. This case is not, in label or in fact, either in rem or quasi in rem. Therefore, the *Princess Lida* doctrine does not apply.").

The Fourth Circuit has indicated that in order to issue a declaratory judgment as to rights in property, a court must either have *in rem* jurisdiction over the property or, in the alternative, it must have *in personam* jurisdiction over the parties implicated by the declaratory judgment

action.  *See R.M.S. Titanic, Inc. v. The Wrecked & Abandoned Vessel*, 435 F.3d 521, 528 (4th Cir. 2006) ("We conclude . . . that the district court did not have *in rem* jurisdiction over the [property] or, absent *in rem* jurisdiction, any other jurisdictional basis upon which to issue a declaratory judgment.").  Notably, although Payments IP's declaratory judgment claim purports to be against the B52 Defendants and Mr. Rajwani, Payments IP in fact seeks a declaration that its rights are exclusive against "all other claimants, known and unknown."  ECF 31, ¶ 40; ECF 31 at 16.  Obviously, this Court does not possess personal jurisdiction over "all other" possible claimants.  Therefore, this Court must obtain *in rem* jurisdiction over the Domain in order to afford Payments IP the declaratory relief it seeks.  *See Hanson*, 357 U.S. at 246 n.12 ("A judgment in rem affects the interests of all persons in designated property.  A judgment quasi in rem affects the interests of particular persons in designated property.").

This Court does not have *in rem* jurisdiction over the Domain.  The California court first exercised jurisdiction over the Domain in December 2016, when Mr. Rajwani filed his second amended complaint in the California case.  *See* California case docket at 2016-12-12 ("2nd Amended Complaint").  In that complaint, Mr. Rajwani asserted a claim to quiet title in the Domain.  *Id.* at 16.  Although the California court later dismissed Mr. Rajwani's quiet title claim, *see* California case docket at 2017-04-28 (court's order), by that time Payments IP had intervened in the California case and filed its own quiet title claim.  *See* California case docket at 2017-02-14 ("Complaint in Intervention").  Because, in California, "[a] quiet title action is a proceeding *in rem*," *40235 Washington St. Corp. v. Lusardi*, 976 F.2d 587, 589 (9th Cir. 1992), it seems that the California court had jurisdiction over the Domain from that time.  *See also Republic Nat. Bank of Miami v. United States*, 506 U.S. 80, 85, 88 (1992) (extending to *in rem*

jurisdiction the principle that jurisdiction, once vested, is not divested).  And, no party has suggested that the California court *lacks* jurisdiction over the Domain.

Given that the California court currently exercises jurisdiction over the Domain, this Court shall not do so, pursuant to the *Princess Lida* doctrine.  *Al-Abood*, 217 F.3d at 231. Rather, I shall stay Payments IP's declaratory judgment claim, which is the only claim against Mr. Rajwani in this Court, pending resolution of the California case.

## II.    Motions to Stay

The B52 Defendants and Mr. Rajwani have moved to stay the case, pending resolution of the California case, on the basis of *Colorado River* abstention.[2]  Following the case of *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), a district court may, in "exceptional circumstances," stay federal litigation that is parallel to a state suit.  *See Chase Brexton*, 411 F.3d at 463.  If a parallel suit exists, the district court must balance several factors before granting a stay.  *Id.*

As discussed, *infra*, the Supreme Court and the Fourth Circuit have identified six factors to guide the analysis.  *Colorado River*, 424 U.S. at 818-19; *Chase Brexton*, 411 F.3d at 463-64 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983); *McLaughlin v. United Va. Bank*, 955 F.2d 930, 934-35 (4th Cir. 1992)).

In evaluating the propriety of a stay under the *Colorado River* doctrine, I shall consider the arguments of the B52 Defendants in their motions to stay (ECF 13, ECF 34); of Mr. Rajwani in his motion to stay (ECF 43); and of Payments IP in its various memoranda opposing a stay.

---

[2] As previously indicated, the case is now stayed as to B52, due to its bankruptcy filing. But, I will consider this issue as to the remaining defendant, Jonathan W. Bierer, as personal representative of the Estate of Lonnie Borck.  And, as indicated, I shall refer to the "B52 Defendants," given that Bierer and B52 filed joint motions.

ECF 18; ECF 40; ECF 51. However, there is no basis to grant Payments IP's motion seeking to file a surreply to the B52 Defendants' First Motion. ECF 23.

The filing of a surreply "is within the Court's discretion, *see* Local Rule 105.2(a), but they are generally disfavored." *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part*, 778 F.3d 463 (4th Cir. 2015). A surreply may be permitted when the party seeking to file the surreply "would be unable to contest matters presented to the court for the first time" in the opposing party's reply. *Clear Channel Outdoor, Inc. v. Mayor & City Council of Baltimore*, 22 F. Supp. 3d 519, 529 (D. Md. 2014) (quotations and citations omitted). However, a surreply is not generally permitted where the reply is merely responsive to an issue raised in the opposition. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 605-06 (D. Md. 2003).

In my view, a surreply is not warranted. Defendants did not raise any issues in their Reply that were not responsive to plaintiff's Opposition. *See Khoury*, 268 F. Supp. 2d at 605-06. Moreover, Payments IP has had multiple subsequent opportunities to argue its opposition to a stay. *See* ECF 40; ECF 51. Therefore, I shall deny the Motion for Surreply.

## A. Parallel Cases

As indicated, in considering abstention under *Colorado River*, a district court must first determine whether the state and federal litigation is parallel. *vonRosenberg v. Lawrence*, 849 F.3d 163, 168 (4th Cir. 2017). Then, if the cases are parallel, the court must balance several factors, as follows, *id.*:

> (1) whether the subject matter of the litigation involves property where the first court may assume in rem jurisdiction to the exclusion of others;
> (2) whether the federal forum is an inconvenient one;
> (3) the desirability of avoiding piecemeal litigation;
> (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action;
> (5) whether state law or federal law provides the rule of decision on the merits; and

(6) the adequacy of the state proceeding to protect the parties' rights.

The Fourth Circuit has suggested that federal and state actions are parallel only "'if substantially the same parties litigate substantially the same issues in different forums.'" *vonRosenberg*, 849 F.3d at 168 (quoting *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991)). Essentially, abstention is inappropriate if "the state action will not resolve every claim at issue in the federal action." *Id.* at 169. These criteria are unquestionably met here.

In this case, the relevant parties are the same: Payments IP has a complaint against the B52 Defendants (B52 Media, LLC and Jonathan W. Bierer) in both forums. *See* ECF 31; ECF 43-7. The California suit also features a complaint by Mr. Rajwani. *See* ECF 43-4 (Rajwani California complaint). But, this is irrelevant; the California case encompasses all the parties and claims pending in the Maryland case. Not only do the cases concern the same basic issue (the ownership of Funding.com) and transactions (the contract to buy Funding.com), but the relief sought by Payments IP in this case is virtually identical to the relief Payments IP seeks as an intervenor in the California case. *See* ECF 31; ECF 43-7 (Payments IP's intervenor complaint in the California case).

In Maryland, Payments IP's first claim is for a declaratory judgment as to its ownership of the Domain. ECF 31 at 10. In California, its first claim is a quiet title action, by which it seeks, essentially, a declaration that it holds valid title to Funding.com. ECF 43-7 at 5. In Maryland, Payments IP's second claim is for breach of contract. ECF 31 at 10-11. The same is true in California. ECF 43-7 at 5-6. And, Payments IP's Maryland and California complaints also share claims for Fraud and Deceit (ECF 31 at 11-13; ECF 43-7 at 6-7); Rescission and Restitution (ECF 31 at 13-15; ECF 43-7 at 7-8); and Conversion. ECF 31 at 15-16; ECF 43-7 at

9-10.  In both cases, all these claims are brought against the B52 Defendants, only, and not Mr. Rajwani.

The only difference between Payments IP's complaints is that the Maryland suit contains a cause of action for Unjust Enrichment (ECF 31 at 16-17), while the California suit alleges Unfair Business Practices, under California law.  ECF 43-7 at 8-9.  However, the relief sought in the two cases is virtually identical.   In both, Payments IP seeks (1) a declaration of title; (2) specific performance transferring the Domain; (3) rescission and restitution; (4) disgorgement of all amounts wrongfully acquired by defendants; (5) monetary damages according to proof at trial; (6) prejudgment and post-judgment interest; (7) punitive damages; and (8) attorney's fees and costs.  ECF 31 at 17-18; ECF 43-7 at 10-11.  The Maryland suit also asks for "any and all other relief that is just and reasonable."  ECF 31 at 18.

In my view, resolution of the California case should resolve every claim at issue in the federal action.

### B.  *Colorado River* Factors

Likewise, each of the six *Colorado River* factors either counsels in favor of abstention or is neutral.  The first factor, whether the litigation involves property over which the state court could exercise *in rem* jurisdiction, has already been addressed: the state court can do so and, indeed, it is doing so.   Thus, to the extent that the declaratory judgment claim seeking adjudication of the ownership of the Domain is still pending, this factor weighs in favor of abstention.

The second factor, whether the federal forum is inconvenient, is either neutral or weighs in favor of abstention.  Mr. Rajwani lives in California, and he claims that this Court would be

less convenient for him. ECF 43-1 at 34. Payments IP concedes that, because it is based in Australia, the California and Maryland courts "will be equally inconvenient." ECF 18 at 5 n.1.

Payments IP insists that, because the B52 Defendants (of which only Bierer remains active, following B52's bankruptcy filing) are based in Baltimore, Maryland, this Court is more convenient to them, and to the Maryland-based third party witnesses who may be called. ECF 51 at 35. However, the B52 Defendants argue that, although they are based in Maryland, they will have to litigate and produce witnesses in California in either eventuality, and therefore maintaining the case in Maryland will merely require duplicated effort and expenses. ECF 22 at 10. Thus, there is minimal convenience in maintaining the Maryland suit, given that the California suit appears likely to continue. *See Domingo v. Paul*, HAR-92-686, 1992 WL 333842, at *8 (D. Md. Nov. 5, 1992) ("[P]roceeding in this Court is also inconvenient in that it will require the parties to duplicate the effort and expense already incurred [in the other forum.]").

The desirability of avoiding piecemeal litigation clearly points in favor of abstention. "'Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results.'" *Gannett Co. v. Clark Const. Grp., Inc.*, 286 F.3d 737, 744 (4th Cir. 2002) (quoting *American Int'l Underwriters, Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988)). The central issue in the Maryland case is equally represented in the California case. Although "[t]he threat of inconsistent results and the judicial inefficiency inherent in parallel . . . litigation . . . are not enough to warrant abstention," *id.*, this is not the only factor that suggests abstention is appropriate.

The fourth factor—the order in which the two courts gained jurisdiction, and the progress made in each case—weighs in favor of abstention, as well. The California case was filed in

October 2016.  *See* ECF 43-9 at 5.  Payments IP moved to intervene on February 3, 2017, and on February 7, 2017, the California court granted leave to intervene.  *See id.* at 4.  At that time, the California court had jurisdiction over Payments IP.  *See United States v. State of Oregon*, 657 F.2d 1009, 1016 n.18 (9th Cir. 1981) (court gained jurisdiction over a party when it intervened). Payments IP filed this suit three days later, on February 10, 2017.  ECF 1.  It filed its Complaint in Intervention in California on February 14, 2017, a week after the request to intervene was granted.  ECF 43-7 (Complaint in Intervention).  Because the inquiry is as to "the order in which jurisdiction was obtained," *Gannett*, 286 F.3d 737, and not the order in which the complaints were filed, the California court should be considered to have priority.

But, as Payments IP argues: "More important than the order in which two courts obtained jurisdiction over a matter is 'how much progress has been made in the two actions.'"  ECF 51 at 37-38 (quoting *Moses H. Cone*, 460 U.S. at 21).  This is true, and it favors abstention.  Little progress has been made in this Court, while in the California case several claims have been dismissed, depositions have been taken, and the litigation is unquestionably further along.  *See* Case CGC-16-554684 (Cal. Sup. Ct.).

The fifth factor, whether federal or state law provides the rule of decision, is either neutral or favors abstention.  Jurisdiction in this Court is based on diversity; there are no federal questions, and so there is no strong reason to retain jurisdiction on this account.  *See* ECF 31 at 5-6; *see also Chase Brexton*, 411 F.3d at 466.  Nor do Payments IP's claims against the B52 Defendants invoke any Maryland statutes.  But, because the two forums in this instance are in different states, and not the federal and state courts of the same state, this factor appears to carry less weight.

The sixth and final factor, the adequacy of the state proceeding to protect the rights of the party that invoked federal jurisdiction, is also either neutral or favors abstention. After all, Payments IP chose to intervene in the California case before it filed this suit, thus suggesting its willingness to litigate in a California state court. And, Payments IP's assertion that the California state court proceedings are "slow . . . relative to this proceeding" (ECF 51 at 40) rings false, given the greater progress of the California case.

Each one of the *Colorado River* factors either weighs in favor of abstention or is neutral. Therefore, I shall grant a stay of this action pending the resolution of that suit.

### III.    Conclusion

For the reasons stated above, I shall GRANT the Rajwani Motion in part and DENY it in part; I shall GRANT the Second Motion; I shall DENY the First Motion, as moot; and I shall DENY the Motion for Surreply.

An Order follows, consistent with this Memorandum Opinion.


Date:   February 23, 2018                                      _____/s/_____
                                                              Ellen Lipton Hollander
                                                              United States District Judge